# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| **LDT KELLER FARMS, LLC, and** ) <br> **KELLER FARMS PARTNERSHIP,** ) <br> ) <br>     **Plaintiffs / Counterclaim Defendants,** ) <br> ) <br>     v. ) <br> ) <br> **BRIGITTE HOLMES LIVESTOCK CO., INC.,** ) <br> **BRIGITTE HOLMES, SAMUEL STEPHEN** ) <br> **HOLMES, and MERVIN MISHLER** ) <br> ) <br>     **Defendants / Counterclaim Plaintiffs.** ) | **CAUSE NO. 1:08-CV-243** |

## OPINION AND ORDER

This matter is before the Court on the plaintiffs' Motion for Summary Judgment on the defendants' counterclaim for defamation. (Docket # 62.) For the following reasons, the motion will be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 17, 2008, LDT Keller Farms, LLC, and Keller Farms Partnership (collectively, "Keller") filed suit against the Brigitte Holmes Livestock Company; Brigitte Holmes, individually; Samuel Stephen Holmes; and Mervin Mishler (collectively, "Holmes") advancing claims for breach of contract, breach of warranty of fitness for a particular purpose, violation of the Packers and Stockyards Act, and fraud.[1] (Compl. ¶¶ 88-117.) Keller alleged that the defendants knowingly and intentionally sold them approximately 284 calves between May 10, 2006, and January 31, 2007, that they represented as being milk-producing "replacement heifers," but actually turned out to be freemartins. (Compl. ¶¶ 9, 88-117.) A heifer is a female

---

[1] Levi Graber, Joseph Graber, and Freeman Raber were originally named as defendants as well but were voluntarily dismissed with prejudice on December 9, 2009. (Docket # 55.)

calf that has not yet reproduced. A freemartin is a sterile female and is therefore biologically incapable of producing milk.[2] Holmes responded that Keller knew the calves were being sold "as-is" and assumed the risk that they would not be able to produce any milk. (Answer ¶ 8.)

In February 2009, approximately four months into this litigation, Keller placed three advertisements in Farm World Newspaper (henceforth, "the Farm World ads").[3] The ad, identical copies of which ran in the February 4, 11, and 18, 2009, editions, stated in full:

> Wanted dairymen who bought replacement heifers
> that turned out to be freemartins from Holmes Livestock,
> Steve Holmes, Mervin Mishler and Levi Graber, please
> call 419-852-2269.

(Countercl. Exs. 1-3.)

On February 10, 2009, counsel for Holmes sent a cease and desist letter to Keller's counsel, informing them of their belief that the Farm World ads were defamatory and warning them that they may file a counterclaim. (Countercl. Ex. 4.) On March 4, 2009, a flier appeared at the Topeka, Indiana, Livestock Auction ("the Topeka flier") bearing the same message as the Farm World ads. (Countercl. Ex. 5.) Keller denies creating or posting the Topeka flier.

The Brigitte Holmes Livestock Company, Stephen Holmes, and Mervin Mishler then filed the instant counterclaim on May 15, 2009, alleging one count of defamation from the

---

[2] Freemartinism is the natural consequence of a mixed-sex set of twins. While the embryos are developing, their blood vessels may become interconnected and allow male hormones from the male calf to circulate inside the female embryo. Genetic tests, which can be expensive, can determine if a female is a freemartin, as can a physical examination. One type of physical examination must be done while the calf is a newborn, while the other can only be done once the cow has reached sexual maturity. Accordingly, there is a window of time in which it is not possible to precisely determine if a female calf is a freemartin.

[3] Farm World is a well-known agricultural publication in the Midwest. It is published in weekly print and online versions and contains articles on a range of agricultural issues, as well as a large number of classified and want ads.

Topeka flier and three counts of defamation from the Farm World ad.[4] (Docket # 44.) Keller countered with a motion for summary judgment on March 1, 2010, arguing that it did not publish the Topeka flier, the ads are true, they did not act with malice, the language of the ads is not defamatory, and that Holmes was not damaged by the ads.[5] (Docket # 62.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder." *Payne*, 337 F.3d at 770. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*; *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

---

[4] Brigitte Holmes is not a counterclaim plaintiff.

[5] For ease of reading, the Brigitte Holmes Livestock Company, Stephen Holmes, and Mervin Mishler, the original defendants and counterclaim plaintiffs, will be referred to as "the plaintiffs." LDT Keller Farms, LLC and Keller Farms Partnership, the original plaintiffs and counterclaim defendants, will be referred to as "the defendants."

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id*. However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id*. at 771.

### III. DEFAMATION

Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999). A plaintiff must generally prove four elements to prevail on a defamation claim: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Newman v. Jewish Cmty. Ctr. Assn. of Indianapolis*, 875 N.E.2d 729, 735 (Ind. Ct. App. 2007). The defendant is entitled to summary judgment if the undisputed material facts negate at least one of the required elements. *Shine v. Loomis*, 836 N.E.2d 952, 956 (Ind. Ct. App. 2005).

A. *Communication with Defamatory Implication*.

Whether a statement carries a defamatory implication is initially a question of law for the court. *N. Ind. Public Serv. Co. v. Dabagia*, 721 N.E.2d 294, 301 (Ind. Ct. App. 1999). However, the question of whether a statement carries a defamatory implication becomes a question of fact for the jury if it is reasonably susceptible to either a defamatory or non-defamatory interpretation. *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001). *See also Dabagia*, 721 N.E.2d at 301; *Coachmen Indus., Inc. v. Dunn*, 719 N.E.2d 1271, 1277 (Ind. Ct. App. 1999); *Davidson*, 716 N.E.2d at 37. "When determining whether a

4

statement [is] defamatory, [the court] may not consider extrinsic facts or circumstances; rather [it] must simply view the communication in its context and give it its plain and natural meaning." *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1230 (Ind. Ct. App. 2005).

There are two possible types of communications with a defamatory imputation. A statement may be defamatory *per se* if, on its face, it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct. *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. Ct. App. 2004). To be defamatory *per se*, "the defamatory nature of the comment must appear without reference to extrinsic facts or circumstances." *Cortez*, 827 N.E.2d at 1230 (citing *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000)).

Any other communication that "tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff," *Davidson*, 716 N.E.2d at 37, is defamation *per quod*. *Smith v. State Farm Ins.*, No. 1:05-cv-238, 2008 WL 187534, at *4-5 (S.D. Ind. Jan. 18, 2008) (citing *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007)). "Statements are defamatory *per quod* where the defamatory character of the statement is not apparent on its face and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning." 50 AM. JUR. 2d LIBEL AND SLANDER § 136 (2010).

B. *Malice*.

Malice is the next requirement of a defamation claim. Contrary to the belief of many litigants, in the context of defamation, malice does not refer to an evil intent or spiteful motive. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-11 (1991). *See Shine*, 836 N.E.2d at

5

958. Rather, malice broadly means the absence of legal justification. 18 IND. LAW ENCYCL. LIBEL AND SLANDER § 14 (2010).

The requirements for proving malice depend on both the status of the plaintiff and the nature of the controversy giving rise to the defamatory statement. Plaintiffs are divided into one of two categories—public figures or private figures—the determination of which is a question of law for the court. *Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 452-54 (Ind. 1999).

If a plaintiff is classified as a public figure, the First Amendment provides limits on their ability to recover on a defamation claim. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269-70 (1963). The United States Supreme Court has held that there are generally two types of public figures: general-purpose and limited-purpose public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974). "General purpose public figures are those individuals who 'achieve such pervasive fame or notoriety that [they] become[ ] a public figure for all purposes and in all contexts.'" *Bandido's*, 712 N.E.2d at 454 (quoting *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987) (alterations in original). However, "[a]bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz*, 418 U.S. at 352. Limited purpose public figures, by contrast, "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* at 345. If a plaintiff is not a public figure, then the First Amendment places no restrictions on the plaintiff's ability to recover for defamation, and he or she is treated as a private figure.

Once the plaintiff's status as either a public figure or a private figure is determined, the

form and method of proving malice hinges on the type of controversy involved. Controversies are grouped into two broad categories: matters of public or general concern and matters of private concern. "A determination of whether a controversy is of public or general concern is a question of law to be determined by the [court]." *Bandido's*, 712 N.E.2d at 452 n.7.

"A matter of general or public interest is one in which the public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct." *Filippo v. Lee Publ'ns, Inc.*, 485 F. Supp. 2d 969, 973-74 (N.D. Ind. 2007) (internal quotations and alterations omitted). Issues of public or general concern are frequently found in cases involving the management of public facilities, *St. John v. Town of Elletsville*, 46 F. Supp. 2d 834, 849 (S.D. Ind. 1999) (finding management of a public sewer is an issue of public concern), public health, *Bandido's*, 712 N.E.2d at 451-52 (finding news report of rats in local restaurant matter of public concern), and public safety. *Aafco Heating & Air Conditioning Co. v. Nw. Publ'ns*, 321 N.E.2d 580, 582 (Ind. Ct. App. 1974) (finding news article on possible causes of fatal residential fire matter of public concern). By contrast, courts have often found speech that only involves "the individual interest of the speaker and its specific business audience" to not be an issue of public or general concern. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 (1985).

In Indiana, in a matter of public or general concern, both private figures *and* public figures must show that the defamatory statement was made with actual malice. *Bandido's, Inc.*, 712 N.E.2d at 452-54. "Actual malice, as an element of the tort of defamation, exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Shine*, 836 N.E.2d at 958 (quoting *N.Y. Times*, 376

7

U.S. at 279-80). Reckless disregard is more than mere negligence, *id.*, and may be shown by proof that the false statement was made "with a high degree of awareness of [its] probable falsity." *Gertz*, 418 U.S. at 331. Actual malice must be shown by clear and convincing evidence. *Bandido's*, 712 N.E.2d at 456. The question of whether there is sufficient evidence to support finding actual malice is a question of law for the court. *Id.*

In contrast to the higher standard for malice in matters of public or general concern, in a matter of purely private concern, a private figure must only prove negligence with regard to the truth or falsity of the statement. *Med. Informatics Eng'g, Inc. v. Orthopaedics Ne., P.C.*, 458 F. Supp. 2d 716, 721 n.3 (N.D. Ind. 2006) (citing *Poyser v. Peerless*, 775 N.E.2d 1101, 1109 n.3 (Ind. Ct. App. 2002) (Baker, J., concurring)). *See also Thompson v. Huntington*, 69 F. Supp. 2d 1071, 1076-77 (S.D. Ind. 1999) ("Although courts have discussed 'negligent defamation,' the term typically refers to negligence as to the truth or falsity of the statement....").

C. *Publication*.

An otherwise defamatory communication is not actionable unless it is published, "that is, communicated to a third person or persons." *Bals v. Verduzco*, 600 N.E.2d 1353, 1354 (Ind. 1992). The publication must be done by the author or by someone acting under his authority. 18 IND. LAW ENCYCL. LIBEL AND SLANDER § 15 (2010) (citing *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258 (Ind. 1994); *Mart v. Hess*, 703 N.E.2d 190 (Ind. Ct. App. 1998)).

"As a general rule, each time defamatory matter is brought to the attention of a third person, there is a new publication constituting a separate cause of action against the person responsible for such new publication." 18 IND. LAW ENCYCL. LIBEL AND SLANDER § 16 (2010) (citing *Van Eaton v. Fink*, 697 N.E.2d 490 (Ind. Ct. App. 1998); *Weenig v. Wood*, 349 N.E.2d

8

235 (Ind. Ct. App. 1976)). However, "the originator of a defamation is not liable for any repetition or republication thereof which is not the natural consequence of his act or which results from the independent and unauthorized act of another." *Powers v. Gastineau*, 568 N.E.2d 1020, 1024 (Ind. Ct. App. 1991) (citing 18 IND. LAW ENCYCL. LIBEL AND SLANDER § 43 (2010)).

D. *Damages*.

The last element of a defamation claim is damages. If a statement is defamatory *per se*, damages are presumed even without proof of any actual harm. *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007). However, "[w]hen a defendant commits defamation *per quod*, the plaintiff is entitled to reimbursement only for special damages that can be proved." *Cortez*, 827 N.E.2d at 1231. Special damages are pecuniary damages that have been actually incurred as a proximate cause of the defamatory statement. *Moore v. Univ. of Notre Dame*, 968 F. Supp. 1330, 1335 (N.D. Ind. 1997). If the plaintiff is unable to prove special damages, it may not recover damages for emotional and physical harm. *Cortez*, 827 N.E.2d at 1231.

*E. Truth is an Absolute Defense*.

Even if a plaintiff is able to prove the four elements of a defamation claim, it may not prevail if the statement is true. "In all prosecutions for libel, the truth of the matters alleged to be libellous, may be given in justification." Ind. Const. Art. 1, § 10. "True statements never give rise to liability for defamation." *Branham*, 744 N.E.2d at 522. The defense of truth must extend to the "innuendo, the libelous implications and insinuations, as well as to the direct accusations in the statement." *Cochran v. Indianapolis Newspapers, Inc.*, 372 N.E.2d 1211, 1217 (Ind. Ct. App. 1978).

9

## IV. DISCUSSION[6]

The defendants advance several theories on why they should be granted summary judgment. They first argue that the undisputed material facts show that they did not publish the Topeka flier and cannot therefore be held liable for its content. The defendants then argue that the plain language of the Farm World ad is not defamatory and that they did not act with malicious intent. They also claim that they are entitled to summary judgment because the plaintiffs suffered no damages. Alternatively, the defendants argue that they cannot be liable for defamation because the Farm World ad is true. As will be discussed, the defendants are entitled to summary judgment with respect to the Topeka flier, but none of their other arguments warrant a grant of summary judgment with respect to the three Farm World ads.

1. *The Defendants' Argument that They Did Not Publish the Topeka Flier.*

The defendants first claim that they are entitled to summary judgment with respect to the Topeka flier. They argue that there is simply no evidence that they published the Topeka flier or authorized anyone else to do so.[7] In their response to the defendants' motion, the plaintiffs do not address the Topeka flier at all, apparently conceding that there is no evidence that the defendants published the flier or authorized it to be published. Claims not addressed in a response to a motion for summary judgment are considered abandoned. *White v. Gerardot*, No. 1:05-CV-382, 2007 WL 541819, at *6 (N.D. Ind. Feb. 15, 2007). Accordingly, the defendants

---

[6] The defendants, perhaps in an overabundance of caution, have moved for summary judgment on several claims that are not made in the counterclaim. Specifically, they are seeking summary judgment on any claims for defamation arising out of the filing of the October 17, 2008, Complaint and from an October 30, 2008, article in the Fort Wayne Journal-Gazette newspaper. However, the counterclaim only sets forth four claims for defamation: one claim arising from the Topeka flier and three claims arising from the Farm World ad.

[7] The defendants do not dispute that they published the three Farm World ads.

10

have successfully negated the necessary element of publication and summary judgment will be GRANTED in their favor with respect to the Topeka flier claim. *See Shine*, 836 N.E.2d at 956 ("A defendant in a defamation case is entitled to summary judgment if he demonstrates that the undisputed material facts negate at least one element of the plaintiff's claim.").

2. *The Defendants' Argument that the Plain Language of the Farm World Ad Is Not Defamatory*.

The defendants next claim that they are entitled to summary judgment because the plain language of the Farm World ad is not defamatory. They claim that the purpose of the ad was to simply solicit responses from other dairymen who bought replacement dairy heifer calves that turned out to be freemartins. (Br. in Supp. 16.) In their reply brief, the defendants go one step further and claim that they placed the ad to identify potential witnesses for use in their breach of contract claim. (Reply Br. 2-3.) The defendants argue that there is nothing in the plain language of the ad that "label[s] or characterize[s] [the plaintiffs] as being anything other than someone who sold replacement dairy heifers." (Reply. Br. 5.) The defendants apparently believe that because the ad does not make an affirmative charge of wrong-doing, it cannot, as a matter of law, be defamatory.

The defendants' argument, however, completely neglects a crucial aspect of defamation law—the fact that a statement that imputes misconduct in a person's trade or business is, by its very nature, presumed to be defamatory *per se*. *Lovings,* 805 N.E.2d at 447. The Farm World ads suggest that the plaintiffs engaged in some misconduct in their trade or profession. The ad seeks dairymen that have bought "*replacement* heifers" (that is, cows that are able to produce milk and may therefore be placed into the dairyman's herd) that turned out to be freemartins (and therefore biologically incapable of producing milk). The ad's imbedded accusation, its

11

implication, is that the plaintiffs are deceiving their customers by purportedly selling heifers capable of milk production but that they are actually selling sterile, and therefore dry, freemartins. Although purchasing freemartins is an expected risk of purchasing dairy cows generally, the reader of the ads is left with the unsavory impression that the plaintiffs are knowingly, or at least perhaps negligently, selling freemartins as heifers. Because the ad imputes misconduct in the plaintiffs' trade or business, it is defamatory *per se, see Barlow v. Sipes*, 744 N.E.2d 1, 8 (Ind. Ct. App. 2001) (finding that an accusation that auto body shop breaks car windows to generate repair business is defamatory *per se*), and, accordingly, the defendants have failed to negate this element of the defamation claim.

3. *The Defendants' Argument that They Did Not Have Malicious Intent*.

The defendants next argue that they are entitled to summary judgment because the undisputed material facts show that they did not act with malicious intent in publishing the ads. "There is no evidence that either Luke Keller or Dan Keller intended any malicious or defamatory intent when they placed the advertisement in Farm World." (Br. in Supp. 16.) This argument, however, again misunderstands the law of defamation and does not warrant a grant of summary judgment.

In the context of defamation, malice does not mean spite or ill-will, *Masson*, 501 U.S. at 510-11; *Shine*, 836 N.E.2d at 958, nor does it mean a deliberate intent to harm. *Herbert v. Lando*, 441 U.S. 153, 200 (1979). Rather, malice is a term of art that simply means the lack of legal justification. 18 IND. LAW ENCYCL. LIBEL AND SLANDER § 14 (2010). The First Amendment dictates that the form and method of proving malice depends on whether the plaintiff is a public or private figure and whether the dispute involves an issue of public or private concern.

12

Even assuming that the defendants are arguing that they did not act with "actual malice," they are not entitled to summary judgment because actual malice is not the correct standard. The first step in the malice inquiry is to determine whether the Brigitte Holmes Livestock Company, Stephen Holmes, or Mervin Mishler are public figures. This determination is purely a question of law for the court. *Bandido's*, 712 N.E.2d at 454 (citing *Rosenblatt v. Baer*, 383 U.S. 75, 88 (1966)). In the present case, each of the plaintiffs is a private figure. None have such "general fame or notoriety in the community," that they must be considered general purpose public figures. *Gertz*, 418 U.S. at 352. Similarly, they have not "thrust themselves to the forefront of particular *public* controversies in order to influence the resolution of the issues involved," such that they are a limited purpose public figure. *Id*. at 345 (emphasis added). Rather, they are simply private parties engaged in a business transaction with other private parties.

In Indiana, however, even private figures must show actual malice in issues of public or general concern. As with the classification of the plaintiff, the determination of whether a controversy is an issue of public or private concern is a question of law for the court. *Bandido's*, 712 N.E.2d at 452 n.7. This dispute is undoubtedly not a matter of public or general concern. Rather, the Farm World ad is simply the product of a business transaction between private parties that has devolved into a lawsuit. Indeed, the defendants themselves state that the motivation behind placing the ad was to strengthen their legal case against the plaintiffs: "Keller Farms ran the advertisements for the purpose of determining whether there are other witnesses that can testify as to having purchased livestock from one or all of the Defendants under similar circumstances." (Reply Br. 2.) Accordingly, the Farm World ad does not address a matter of public or general concern and the actual malice standard does not therefore apply to this

13

defamation claim.

Because all the plaintiffs are private figures and this dispute concerns a matter of private concern, the plaintiffs must only prove that the defendants acted negligently in making the statements. *Med. Informatics Eng'g, Inc.*, 458 F. Supp. 2d at 721 n.3. The defendants do not address this point and do not point to any undisputed material facts that would lead the jury to conclude that they were not negligent with respect to the truth or falsity of the Farm World ads. Accordingly, the defendants fail to negate the malice element of the plaintiffs' claim and summary judgment is inappropriate on this basis.

4. *The Defendants' Argument that the Plaintiffs Were Not Damaged*.

The defendants also argue that they are entitled to summary judgment because the plaintiffs were not damaged by the Farm World ad. They contend that the broader economic recession of 2008 was the real reason for the decline in the defendants' business. (Br. in Supp. 19.) The plaintiffs, however, respond that it is unnecessary to prove actual damages, because the ads constitute defamation *per se*.

The plaintiffs' argument is, of course, correct. In cases of defamation *per se*, damages are presumed, even in the absence of any evidence of actual harm. *Hamilton*, 860 N.E.2d at 243. The defendants have failed to negate this element of the plaintiffs' defamation claim. Their argument that the plaintiffs were not damaged, which ignores the correct legal standard and, in any event, is largely based on conjecture and assumption rather than undisputed facts, does not warrant a grant of summary judgment.

5. *The Defendants' Defense that the Farm World Ads Are True*.

Finally, the defendants argue that they are entitled to summary judgment because the

14

Farm World ad is true. They argue that because the plaintiffs knew that some heifers they had sold in the past turned out to be freemartins, the Farm World ads are true and cannot give rise to liability for defamation. The defendants' argument, however, is again unpersuasive.

Truth is a complete defense to a defamation claim, but the defense must also extend to the "innuendo, the libelous implications and insinuations, as well as to the direct accusations in the statement." *Cochran*, 372 N.E.2d at 1217. The Farm World ads are defamatory *per se* because they impute dishonesty in the plaintiffs' trade or profession; that is, they suggest to the reader that the plaintiffs may be selling calves as dairy replacement heifers when they know or suspect them to actually be freemartins. Therefore, in order for the defendants' defense of truth to succeed, it is not enough that some calves actually turned out to be freemartins. Rather, it must also be true that the plaintiffs are deceiving other buyers by knowingly or negligently selling freemartins as breedable heifers.

Although there is evidence that the plaintiffs knew that some calves they had previously sold as breedable heifers did in fact turn out to be freemartins, the defendants point to no evidence in their motion for summary judgment that suggests that the plaintiffs were withholding information from their buyers. For example, the defendants claim that the plaintiffs previously sold heifers to James Burkholder, but replaced them when they turned out to be freemartins. (Br. in Supp. 18.) This evidence hardly suggests that the plaintiffs are deceiving or defrauding their customers, and in fact, it suggests quite the opposite. Similarly, the defendants' argument that the ad is true because the plaintiffs were aware of the general risk that heifers might turn out to be freemartins is unpersuasive. This knowledge, in and of itself, does not automatically mean that the plaintiffs are deceiving or defrauding their customers. As such, on this record, the Court

15

cannot say that, as a matter of law, that the Farm World ads are not true. Accordingly, the defendants' motion for summary judgment is DENIED with respect to the Farm World ad.

## V. CONCLUSION

To summarize, Keller's motion for summary judgment (Docket # 62) is GRANTED with respect to the defamation claim based on the Topeka flier. With respect to the Farm World ad, the motion for summary judgment is DENIED and those three claims remain for trial.

SO ORDERED.

Enter for June 25, 2010.

                                                S/Roger B. Cosbey
                                                Roger B. Cosbey,
                                                United States Magistrate Judge